IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DALE BRAMLETT, INDIVIDUALLY,   §
AND AS INDEPENDENT   §
ADMINISTRATOR OF THE ESTATE   §
OF VICKI BRAMLETT, DECEASED,   §
et al.,   §
   §
               Plaintiffs,   §
   §   Civil Action No. 3:10-CV-2048-D
VS.   §
   §
THE MEDICAL PROTECTIVE   §
COMPANY OF FORT WAYNE,   §
INDIANA, et al.,   §
   §
               Defendants.   §

MEMORANDUM OPINION
AND ORDER

Defendants' motion to dismiss requires the court to interpret and apply the Texas

Supreme Court's decision in *Phillips v. Bramlett*, 288 S.W.3d 876 (Tex. 2009) ("*Phillips II*").

Although *Phillips II* construed § 11.02(c) of the now-repealed Medical Liability and

Insurance Improvement Act of 1977 ("MLIIA"), Tex. Rev. Civ. Stat. Ann. art. 4590i

(repealed Sept. 1, 2003),[1] and decided a question that appears unlikely to recur due to a

---

[1] A similar law—but with a critical difference that appears to preclude the recurrence of the issue decided today—is presently codified as Tex. Civ. Prac. & Rem. Code Ann. §§ 74.301-74.303 (West 2011). As of September 1, 2003, a physician's civil liability for certain damages on a health care liability claim is limited by §§ 74.301 and 74.303. Section 74.303(d) provides, however, that "[t]he liability of any insurer under the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine' shall not exceed the liability of the insured." In *Phillips II* the Supreme Court of Texas noted that "[t]he *Stowers* exception in section 11.02(c) was not carried forward, but rather replaced by section 74.303(d) which expressly provides that the insurer can now use the cap to limit its

statutory change, the correct interpretation of *Phillips II* is of considerable significance to the parties to this case. This interpretation resolves whether, and to what extent, plaintiffs can bring a direct *Stowers*-type[2] claim against their physician's insurer under § 11.02(c). For the reasons explained, the court concludes that a plaintiff can bring such a direct action against his physician's insurer under § 11.02(c) of the MLIIA when *Stowers* facts exist, and therefore denies in part the motion to dismiss. The court grants the motion to dismiss as to plaintiffs' other claims.

I

The court has recounted the background facts and procedural history of this litigation in *Bramlett v. The Medical Protective Co.*, 2010 WL 1491422, at *1 (N.D. Tex. Apr. 13, 2010) (Fitzwater, C.J.) ("*Bramlett I*"), and *Bramlett v. The Medical Protective Co.*, 2011 WL 248849, at *1 (N.D. Tex. Jan. 26, 2011) (Fitzwater, C.J.) ("*Bramlett II*"). It will therefore limit its discussion to what is pertinent to today's decision.

This is a removed state-court lawsuit arising in connection with a medical malpractice

---

liability[.]" *Phillips II*, 288 S.W.3d at 880 n.5. The majority in *Phillips II* "view[ed] this as a substantive change," but it concluded that "[t]he Dissent apparently [did] not." *Id.* This difference between the repealed MLIIA and the current statute appears to preclude today's question from recurring.

[2]*G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. 1929). "An insurer's *Stowers* duty is its duty 'to exercise ordinary care in the settlement of claims to protect its insureds against judgments in excess of policy limits.'" *RLI Ins. Co. v. Phila. Indem. Ins. Co.*, 421 F.Supp.2d 956, 968 n.10 (N.D. Tex. 2006) (Fitzwater, J.) (quoting *Am. Phys. Ins. Exch. v. Garcia*, 876 S.W.2d 842, 843 n.2 (Tex. 1994)).

lawsuit (the "Underlying Suit") that plaintiffs[3] filed in Texas state court against Benny P. Phillips, M.D. ("Dr. Phillips"). Dr. Phillips was at one time a defendant in this lawsuit, but the court dismissed the case against him based on plaintiffs' failure to state a claim on which relief could be granted. *See Bramlett II*, 2011 WL 248849, at *4.

Defendant The Medical Protective Company of Fort Wayne, Indiana insured Dr. Phillips under a medical malpractice policy with limits of $200,000 (the "Policy"). The jury in the Underlying Suit returned a verdict in plaintiffs' favor, and the trial court entered judgment against Dr. Phillips for $9,196,364.50 in actual damages and $2,972,000 in punitive damages. *Phillips v. Bramlett*, 258 S.W.3d 158, 164 (Tex. App. 2007) ("*Phillips I*"), *rev'd*, 288 S.W.3d 876 (Tex. 2009). On appeal, the court of appeals affirmed in most respects. *Id.* at 183.[4] Of particular significance to today's decision, it held that Dr. Phillips could not benefit from Tex. Rev. Civ. Stat. Ann. art. 4590i, § 11.02(a) (repealed Sept. 1, 2003), a provision of the MLIIA that limited a physician's civil liability for damages in an action on a health care liability claim (the "Physician Liability Cap"). *Id.* at 179. The court of appeals reached this conclusion based on § 11.02(c) of the MLIIA, which provided that § 11.02 did not limit an insurer's liability where facts existed that would enable a party to

---

[3]Plaintiffs are Dale Bramlett, individually, and as independent administrator of the Estate of Vicki Bramlett, deceased, Shane Fuller, and Michael Fuller.

[4]Concerning the issue of gross negligence, the court of appeals held that the evidence was legally insufficient to support the verdict; it reversed and rendered a take nothing judgment in favor of Dr. Phillips. *Phillips I*, 258 S.W.3d at 182-83. The court of appeals suggested a remittitur of $220,000 of the damages award for future pecuniary loss made to two plaintiffs. *Id.* at 183.

invoke the *Stowers* doctrine (the "*Stowers* Exception").  *Id.*

Dr. Phillips petitioned the Supreme Court of Texas for review.  *See Phillips II*, 288 S.W.3d at 878.  He argued, *inter alia*, that the court of appeals erred in not limiting his liability based on the MLIIA.  *See id*.  The Texas Supreme Court granted review and held that the court of appeals erred in not limiting Dr. Phillips' liability under the Physician Liability Cap of the MLIIA.  The court reversed and remanded the case to the trial court to cap Dr. Phillips' liability and render judgment.  *Id.* at 883.  In doing so, it "reserv[ed] for another case any suit against the insurer under section 11.02(c)'s Stowers exception."  *Id.* at 882.

In 2009 plaintiffs filed such a lawsuit in Texas state court against The Medical Protective Company of Fort Wayne, Indiana, Medical Protective Insurance Services, Inc. d/b/a The Medical Protective Company of Fort Wayne, Indiana (collectively, "MedPro"), and two individuals.  After MedPro removed the case to this court, plaintiffs' claims against MedPro were dismissed without prejudice.  *See Bramlett I*, 2010 WL 1491422, at *1.

Plaintiffs subsequently filed the instant case in Texas state court against MedPro and Dr. Phillips,[5] alleging that MedPro negligently failed to settle their medical malpractice claim against Dr. Phillips within Policy limits.  *Bramlett II*, 2011 WL 248849, at *1.  MedPro again removed the case to this court.  *Id.*  Plaintiffs thereafter filed an amended complaint asserting

_____

[5]On Dr. Phillips' motion, the court dismissed plaintiffs' action against him with prejudice.

- 4 -

causes of action against MedPro.[6]  They allege a statutory claim under the MLIIA for excess liability resulting from MedPro's negligent failure to settle their claim against Dr. Phillips within Policy limits.   They also assert that MedPro violated Tex. Ins. Code. Ann. § 541.060(a)(2)(A) (West 2009), that it acted in bad faith and with gross negligence, and that it breached the Policy.  MedPro moves to dismiss under Fed. R. Civ. P. 12(b)(1), contending that plaintiffs lack standing to pursue their claims against MedPro.  Plaintiffs oppose the motion.

## II

Although MedPro moves to dismiss this action under Rule 12(b)(1) for lack of standing, the motion does not challenge whether this court has subject matter jurisdiction.[7] MedPro's motion challenges on the merits whether plaintiffs have viable claims under the MLIIA, as interpreted in *Phillips II*, or on any other basis alleged.  Accordingly, the court will treat the motion as one brought under Rule 12(b)(6) for failure to state a claim on which

---

[6]Plaintiffs again assert a claim against Dr. Phillips.  But they correctly acknowledge that, because the court has previously dismissed their action against Dr. Phillips with prejudice, they cannot bring a cause of action against him by filing an amended complaint in this suit.  Because Dr. Phillips has been dismissed from this lawsuit with prejudice, the dismissal cannot be circumvented by filing an amended complaint.

[7]A Rule 12(b)(1) motion challenges a court's subject matter jurisdiction. *See, e.g., In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, ___ F.3d. ___, 2012 WL 171898, at *3 (5th Cir. Jan. 23, 2012) ("A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court.").  MedPro is not challenging this court's subject matter jurisdiction through its attack on plaintiffs' standing; instead, it is contending that plaintiffs cannot recover on the merits of any of their claims.

relief can be granted.[8]

In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' amended complaint by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive MedPro's motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted).

---

[8]At oral argument, MedPro's counsel explained why MedPro moved to dismiss under Rule 12(b)(1) rather than under Rule 12(b)(6). The court is satisfied following its exchange with MedPro's counsel that the arguments MedPro has made would have been essentially the same even had the motion been filed under Rule 12(b)(6). Therefore, neither plaintiffs nor MedPro will be prejudiced by the court's analyzing the motion under the standards for a Rule 12(b)(6) motion and without requesting additional briefing.

III

The question whether plaintiffs have a viable claim against MedPro under the MLIIA for excess liability—i.e., the difference between the capped MLIIA amount and the jury verdict [9]—resulting from MedPro's alleged negligent failure to settle their claim against Dr. Phillips within Policy limits turns on the correct interpretation of *Phillips II*.

A

In *Phillips II* the Texas Supreme Court interpreted two provisions of the MLIIA. The first—the Physician Liability Cap—stated: "[i]n an action on a health care liability claim where final judgment is rendered against a physician or health care provider, the limit of civil liability for damages of the physician or health care provider shall be limited to an amount not to exceed $500,000." Tex. Rev. Civ. Stat. Ann. art. 4590i, § 11.02(a). The second—the "*Stowers* Exception"—created an exception to the cap: "[t]his section shall not limit the liability of any insurer where facts exist that would enable a party to invoke the common law theory of recovery commonly known in Texas as the 'Stowers Doctrine.'" *Id.* § 11.02(c). The *Phillips II* court discussed the opinions of two Texas courts of appeals that had previously addressed the relationship between the Physician Liability Cap and the *Stowers*

---

[9]Article 4950i, § 11.04 provided that the cap was to be adjusted according to changes in the consumer price index. In this case, the $500,000 cap was actually the adjusted sum of $1,585,365.85, which functioned to reduce plaintiffs' judgment from $9,196,364.50 to $1,585,365.85. *See Phillips I*, 258 S.W.3d at 176-77. Thus plaintiffs seek the excess judgment of approximately $8.5 million. Article 4590i, §11.02(b) provided that the MLIIA cap "does not apply to the amount of damages awarded on a health care liability claim for the expenses of necessary medical, hospital, and custodial care received before judgment or required in the future for treatment of the injury."

Exception but had reached different conclusions. One of the opinions—the decision of the Amarillo Court of Appeals in *Phillips I*—was the decision being reviewed in *Phillips II*.

In *Welch v. McLean*, 191 S.W.3d 147 (Tex. App. 2005, no pet.), the Fort Worth Court of Appeals addressed a physician's contention that the trial court had improperly refused to apply the Physician Liability Cap to the damages award against him. *Id.* at 166. The trial court did not apply the cap because it found facts that enabled the plaintiffs to come under the *Stowers* Exception. *Id.* On appeal, the physician argued that the *Stowers* Exception "merely provides that his *insurer's liability* is not limited by the [Physician Liability Cap] if facts exist that would enable him to invoke the *Stowers* doctrine." *Id.* at 167 (emphasis added). The *Welch* court agreed that the Physician Liability Cap applied to the physician's liability and that the *Stowers* Exception applied only to *insurers* and did not affect the *physician's* right to limit his liability under the cap. *Id.* at 168. But the *Welch* court also limited a potential recovery under the *Stowers* Exception by a physician against his insurer to the difference between the Physician Liability Cap and the *policy limits*. In other words, the *Welch* court did not permit the physician to recover the difference between the Physician Liability Cap and the *excess judgment*. *See id.* at 171.[10] The *Welch* court therefore held that the physician's liability was limited by the Physician Liability Cap, and that the insurer's

---

[10]For example, if a physician were insured at the amount of the Physician Liability Cap, *Welch* would never permit him to recover under the *Stowers* Exception. Only a physician who carried liability insurance in an amount lower than the Physician Liability Cap would ever have a right to pursue a *Stowers* claim under the *Stowers* Exception, and that right would be for the difference between his policy limits and the amount of the Physician Liability Cap.

potential *Stowers* liability was limited to the difference between the limits of the policy and the amount of the Physician Liability Cap, and that the insurer's liability under the *Stowers* Exception could not exceed the Physician Liability Cap.

In *Phillips I* the Amarillo Court of Appeals disagreed with *Welch*'s interpretation of the MLIIA. Dr. Phillips argued that the trial court had committed reversible error by failing to apply the Physician Liability Cap to him, which would have resulted in an approximately $8 million reduction in the judgment, and that the *Welch* court had properly interpreted the MLIIA in holding that the *Stowers* Exception did not abrogate the Physician Liability Cap. *Phillips I*, 258 S.W.3d at 176-78. The *Phillips I* court, however, construed the *Stowers* Exception to preclude *any* application of the Physician Liability Cap in a manner that would limit the liability of the insurer in a subsequent *Stowers* claim. *Id.* Thus *Phillips I* held that, before the trial court could enter a judgment in a medical malpractice action, it must determine whether there were facts that would enable a party to invoke the *Stowers* doctrine; if there were, the *Stowers* Exception eliminated the Physician Liability Cap *as to the physician's liability* where *Stowers* facts existed. *Id.* at 179.

In *Phillips II* the Texas Supreme Court disagreed in material respects with *Welch* and *Phillips I*. The court rejected *Welch*'s view (which the four dissenting justices in *Phillips II* would have adopted) "that the Stowers exception to the cap was meant only to clarify the continued, but limited, application of the Stowers Doctrine to claims governed by article 4590i[,]" i.e., that the *Stowers* Exception to the Physician Liability Cap would only apply in cases where the physician's policy limits were below the Physician Liability Cap. *Phillips*

*II*, 288 S.W.3d at 880.  The *Phillips II* majority reasoned that the dissenting justices and *Welch* "attribute[] no meaning to the Stowers exception" because, regardless whether the *Stowers* Exception had been enacted, a traditional *Stowers* claim would have been available to a physician whose insurance policy had limits below the Physician Liability Cap.  *Id.*  The *Phillips II* majority concluded that the dissenting justices were "able to disregard section 11.02(c)'s principal purpose: that the cap 'not limit the liability of any insurer' when Stowers facts exist."  *Id.* (citations omitted).

The *Phillips II* court then interpreted § 11.02, concluding that its plain language made "unmistakable" at least two aspects of the Texas Legislature's intent.  *Id.*  First, the Legislature enacted § 11.02(a) "to cap the liability of a physician or other health care provider according to the statutory formula."  *Id.*  Second, the Legislature enacted § 11.02(c) so "that the cap [w]ould not benefit any insurer when Stowers facts exist."  *Id.* at 880-81.  The court also concluded that whether *Stowers* facts existed was to be determined based on the jury verdict rather than on the verdict as capped by § 11.02(a).  *Id.* at 881 n. 6.  Thus even if a traditional *Stowers* claim was not available because the insured's policy limits exceeded the Physician Liability Cap, *Stowers* facts could still exist.  This was so because excess liability was determined by the jury verdict.  If *Stowers* facts did exist, the Physician Liability Cap should only benefit the insured physician, not the insurer.  The Texas Supreme Court's interpretation of § 11.02 in *Phillips II* did not embrace the reasoning of *Welch* or *Phillips I*.  The *Phillips II* court disagreed with *Welch* "because it extends the cap's benefit to insurers without regard to whether Stowers facts exist."  *Id.* at 881.  And it disagreed with *Phillips I*

because it did not cap the physician's liability when *Stowers* facts existed, even though § 11.02(a) required that the physician's liability always be capped. *Id.*

*Phillips II* then concluded that the Physician Liability Cap, while eliminating a conflict between the insured and the insurer for liability that exceeded the cap, did "nothing to encourage settlement. In fact, it may have the opposite effect in the most serious cases, that is, in cases where liability is reasonably certain to exceed the cap." *Id.* at 881-82. Concluding that the Texas Legislature was concerned about the effect the cap would have on an insurer's *Stowers* duty, the *Phillips II* court interpreted § 11.02(c) to "ameliorate[] that potential effect." *Id.* at 882.

To illustrate this point, the court analogized the case to *American Centennial Insurance Co. v. Canal Insurance Co.*, 843 S.W.2d 480 (Tex. 1992), "where the insured's purchase of an excess insurance policy operated like the cap here to potentially skew the primary insurer's duty to settle with reasonable care." *Phillips II*, 288 S.W.3d at 882. In *Canal* the insured had three insurance policies: a primary policy that provided coverage up to $100,000, an excess policy that provided coverage from $100,000 to $1 million, and an additional excess policy that provided coverage from $1 million to $4 million. *Canal*, 843 S.W.2d at 481. After the primary insurer and its counsel allegedly negligently mishandled the underlying claim, resulting in a settlement of $3.7 million, the two excess insurers sued the primary insurer to recover under *Stowers*. *Id.* The Texas Supreme Court addressed the question whether an excess insurer could recover against a primary insurer under *Stowers*. *Id.* It held that an excess insurer can "maintain an action against the primary liability insurer

for its wrongful refusal to settle the insured's claim within the limits of the primary policy." *Phillips II*, 288 S.W.3d at 882.  It extended to excess carriers a right of equitable subrogation because "the insured, who was fully protected from liability by the excess policy, would have little incentive to enforce the primary carrier's duties and that the excess carrier should therefore be permitted to do so through equitable subrogation."  *Id.*[11]  In the view of the *Phillips II* court, the *Stowers* Exception of the MLIIA "is like this right to equitable subrogation.  It puts the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care."  *Id.*

The *Phillips II* court then applied its interpretation of § 11.02 to hold that "both the statutory cap and its exception can be applied as written by conforming the judgment against the physician to section 11.02(a)'s cap and reserving for another case any suit against the insurer under section 11.02(c)'s Stowers exception."  *Id.*  In that other case, the *Stowers* Exception claim "may be shared by the insured physician and the injured third party because both will potentially have excess claims when the damages finding exceeds the cap."  *Id.*  But "[w]hen insurance coverage is above the cap . . . the physician is fully protected, and only the injured third party has incentive to pursue the statutory Stowers exception."  *Id.*

The parties to the present case agree that *Phillips II* interpreted § 11.02(c) as granting

_____

[11]The *Canal* court granted the excess carrier an equitable subrogation claim against the primary insurer rather than a direct cause of action because the excess insurer in that case "appear[ed] to have an adequate remedy using equitable subrogation."  *Canal*, 843 S.W.2d at 483.  Therefore, the court "decline[d] at th[at] time to permit a direct action."  *Id.*

an injured third party a cause of action against an insurer where *Stowers* fact exist, i.e., where the insurer negligently fails to settle within policy limits in a suit governed by the MLIIA. *See Phillips II*, 288 S.W.3d at 882 ("[R]eserving for another case any suit against the insurer *under section 11.02(c)'s Stowers exception.*") (emphasis added).   The parties disagree, however, about the nature of the claim.   MedPro maintains that the claim, while statutory, functions as a common law equitable subrogation claim, meaning that plaintiffs "step into the shoes" of the insured physician to assert any rights he has against the insurer.   If MedPro is correct, this would allow insurers to assert against the injured third parties the defenses that they could raise against the insured physician were he bringing the claim.   *See Canal*, 843 S.W.2d at 483.   Plaintiffs argue that *Phillips II* interpreted § 11.02(c) to grant to an injured third party (where *Stowers* facts exist) a direct cause of action against the insurer to recover the difference between the Physician Liability Cap and the jury verdict.   In other words, they maintain that, where *Stowers* facts exist, injured third parties can recover from the insurer on a direct *Stowers*-type cause of action, even if the amount they seek exceeds the Physician Liability Cap, and even though the insured himself would not have a right to recover under *Stowers* because of his statutorily-capped liability.

## B

This court is obligated to attempt as best it can to faithfully interpret a decision of the Texas Supreme Court—even one that, as here, is at times difficult to comprehend and that

has perplexed four dissenting justices as to its reasoning and effect.[12] Having studied *Phillips II*, the court concludes that the opinion can only reasonably be understood as interpreting § 11.02(c) to grant an injured third party a direct cause of action against the physician's insurer when *Stowers* facts exist. The result of this interpretation is to allow the injured third party to recover from the insurer the difference between the jury verdict and what would otherwise have been recoverable under the Physician Liability Cap.[13]

The *Phillips II* court rejected the position of the dissenting justices and *Welch* that the Texas Legislature enacted § 11.02(c) merely to clarify that the Physician Liability Cap did not alter the availability of a traditional *Stowers* action in those instances where it would otherwise have been available. If the views of the dissenting justices and *Welch* had prevailed, § 11.02(c) would only have mattered in "cases involving insurance policies falling below the cap." *Phillips II*, 288 S.W.3d at 880. But the majority in part determined the intent of the Texas Legislature from the fact that an insured physician would have had a traditional *Stowers* action for excess liability up to the Physician Liability Cap even had § 11.02(c) not been enacted. *Id.* Therefore, the *Phillips II* majority thought the dissenting justices and *Welch* had rendered § 11.02(c) "meaningless" by interpreting it to preserve what

---

[12]This effect, of course, appears to have been addressed by the repeal of the MLIIA. *See supra* note 1.

[13]Because the court holds that plaintiffs have a direct *Stowers* Exception claim against MedPro, it need not address plaintiffs' argument that MedPro is judicially estopped from disputing plaintiffs' standing. Nor need the court address Dr. Phillips' purported release, because, assuming he released MedPro, this cannot affect plaintiffs' direct *Stowers* Exception claim, which is not in the nature of equitable subrogation.

would have been the case even without § 11.02(c).  *Id.*  The *Phillips II* majority therefore

concluded that, properly interpreted, § 11.02(c) must provide a cause of action that is greater

than a traditional *Stowers* action for damages up to the statutory cap, and this cause of action

must ensure "that the cap [does] not benefit [the] insurer when Stowers facts exist."  *Id.* at

880-81.

The majority also reasoned that the Texas Legislature did not intend that the Physician

Liability Cap benefit insurers when *Stowers* facts existed because, if the cap had that effect,

it would in some instances remove the insurer's incentive to reasonably settle.  *Id.* at 881-82.

> Capping the insured physician's liability at a fixed
> amount eliminates any potential for conflict between insurer and
> insured beyond that amount, but does nothing to encourage
> settlement.  In fact, it may have the opposite effect in the most
> serious cases, that is, in cases where liability is reasonably
> certain to exceed the cap.

*Id.*  For example, if an insurer could benefit from the Physician Liability Cap, it would have

little incentive to settle for an amount near the cap, even if the offer represented a reasonable

settlement, because the most the physician (and thus the insurer) would have to pay in a

subsequent traditional *Stowers* action would be cabined by the Physician Liability Cap.

Thus, according to the majority, to maintain an insurer's incentive to reasonably settle, the

Texas Legislature enacted § 11.02(c) to provide injured third parties a direct cause of action

to recover the difference between the Physician Liability Cap and the jury verdict.

Under this interpretation, the *Stowers* Exception ensures that insurers will face excess

liability if they fail to reasonably settle within policy limits, just as a traditional *Stowers*

action did before the Physician Liability Cap was enacted.  When insurance coverage is

below the Physician Liability Cap, the *Stowers* Exception claim is "shared by the insured

physician and the injured third party because *both* will potentially have excess claims when

the damages finding exceeds the cap." *Id.* at 882 (emphasis added).  In other words, the

insured and the injured third party both have claims against the insurer because both have

suffered injuries; the insured physician has a *Stowers* Exception claim because he has been

injured due to being held liable above his policy limits, up to the amount of the Physician

Liability Cap.  The injured third party has a direct *Stowers* Exception claim created by the

Texas Legislature in § 11.02(c) for the amount from the Physician Liability Cap up to the

amount of the jury verdict.  "When insurance coverage is above the cap . . . the physician is

fully protected, and only the injured third party has incentive to pursue the statutory Stowers

exception."[14] *Id.*  Here, only the injured third party has a claim for the excess judgment.  By

---

[14]MedPro argues that the Texas Supreme Court's discussion of the *Stowers* Exception claim in *Phillips II* is merely *dicta*.  Even assuming *arguendo* that MedPro is correct, it is *judicial dictum*, and this court is obligated to follow its reasoning.

Texas law distinguishes between *obiter dictum*, which is a judicial statement made in passing, and *judicial dictum*, which is "articulated very deliberately after mature consideration." *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007) (per curiam) (citations and internal quotation marks omitted).  Lower courts need not follow *obiter dictum*.  But *judicial dictum* "is at least persuasive and should be followed unless found to be erroneous." *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1965); *see also Elledge*, 240 S.W.3d at 870 (holding that although "not essential to the outcomes" of two previous cases, the court of appeals "should have[] followed" the Texas Supreme Court's statements in those cases).

The discussion of the *Stowers* Exception claim in *Phillips II* is *judicial dictum* because it was "articulated very deliberately after mature consideration." *Elledge*, 240 S.W.3d at 870.  The discussion was integral to the court's reasoning and to its rejection of the interpretations of § 11.02 found in *Welch* and *Phillips I*.  Moreover, the explanation of how the *Stowers*

- 16 -

interpreting § 11.02(c) as creating a direct cause of action for injured third parties when *Stowers* facts exist, the *Phillips II* court made certain that the insurer would have an incentive to reasonably settle, regardless of whether insurance coverage was above or below the cap.

MedPro argues that the *Phillips II* court analogized the *Stowers* Exception claim to the equitable subrogation claim in *Canal* because the court intended that the *Stowers* Exception claim function in the same manner as an equitable subrogation claim. *See Phillips II*, 288 S.W.3d at 882 ("[T]he Stowers exception to the cap is like this right to equitable subrogation. It puts the injured third party in the shoes of the insured to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care."). The court disagrees with MedPro's position.

First, although the *Phillips II* court analogized to equitable subrogation, it did not explicitly state that the cause of action was an equitable subrogation claim. To be sure, the claim "puts the injured third party in the shoes of the insured," but it does so "to the extent the cap eliminates the insured's incentive to enforce the insurer's duty to settle with reasonable care." *Id.*

Second, as described in *Phillips II*, the *Stowers* Exception claim cannot function like an equitable subrogation claim because there will be instances in which there is no claim for

---

Exception claim would work (depending on whether the insurance policy was above or below the Physician Liability Cap) further demonstrates that the court gave its interpretation of the *Stowers* Exception claim the "mature consideration" necessary to classify it as *judicial dictum*. This court is therefore obligated to follow the *Phillips II* court's interpretation of § 11.02(c).

the injured third party and the insured physician to "share."[15]  An equitable subrogation claim

only allows a third party to recover to the same extent as the party into whose shoes he steps.

*See Canal*, 843 S.W.2d at 482.  When the insurance policy is below the Physician Liability

Cap, the insured physician can pursue damages under *Stowers* up to the cap.  If he does, an

injured third party cannot "step into his shoes" to assert his claims against the insurer because

the insured physician has been fully compensated.  Thus the *Phillips II* court could not have

intended that the *Stowers* Exception claim function as an equitable subrogation claim because

"both" parties would not then have claims when the insurance policy was below the

Physician Liability Cap.  If the *Stowers* Exception claim is a direct action, however, it gives

"both" parties a claim against the insurer—the physician under common law *Stowers* for his

---

[15]This is in part why it does not appear that the *Phillips II* court intended that the *Stowers* Exception claim function like the equitable subrogation claim created in *Canal*.  In *Canal* the excess carrier had the right of equitable subrogation to enforce the insured's *Stowers* claim against the primary insurer.  The insured had no incentive to pursue his traditional *Stowers* rights because, even though he could recover up to the excess judgment, his excess insurance policy fully covered all of his liability, including the judgment in excess of his primary insurance policy.  The situation in *Phillips II* is not perfectly analogous. Under *Phillips II* the insured physician can only pursue a traditional *Stowers* claim up to the Physician Liability Cap because this is the extent of his liability to the third party.  Thus rather than having no incentive to pursue his traditional *Stowers* right because his liability is covered by an excess insurance policy, as was the case in *Canal*, the insured in *Phillips II* has no liability above the Physician Liability Cap.  Therefore, any recovery by a third party for damages above the cap must come as a result of a direct action, because the insured physician has no claim that a third party can pursue through equitable subrogation.  The *Phillips II* court therefore could not have intended to analogize to the equitable subrogation claim in *Canal* to characterize the way the *Stowers* Exception claim would function.  As discussed *infra*, the analogy was used to demonstrate how the cap in *Phillips II* is like the excess policy in *Canal* in that they both skew insurers' incentives to adhere to their *Stowers* duty.

excess liability up to the Physician Liability Cap, and the injured third party for the difference between the Physician Liability Cap and the jury verdict.[16]  And assuming that a physician would purchase an insurance policy with limits in excess of the Physician Liability Cap, the same direct action allows an injured third party to recover the difference between the cap and the jury verdict.  An injured third party cannot have an equitable *Stowers* Exception claim when the policy limits exceed the Physician Liability Cap because the insured physician faces no liability for which he can recover from his insurer under *Stowers*.

Third, the *Phillips II* court discussed the analogy to the equitable subrogation claim in *Canal* in the context of its concern that the Physician Liability Cap would "eliminate[] the insured's incentive to enforce the insurer's duty to settle with reasonable care."  *Phillips II*, 288 S.W.3d at 882.  The *Stowers* Exception claim is "like" an equitable subrogation claim and puts the injured third party "in the shoes" of the insured physician only to the extent that both claims provide an incentive for the insurer to adhere to its *Stowers* duty.  The party who typically enforces that right in a traditional *Stowers* action (the insured) has no incentive, or in some instances no ability, to do so in the scenarios that the Texas Supreme Court sought

---

[16]MedPro argues that plaintiffs are not injured if they receive damages in the amount of the Physician Liability Cap (via the insured), because plaintiffs would only be entitled to damages up to the cap if *Stowers* facts were not present, and that plaintiffs should not receive a windfall merely because *Stowers* facts exist.  But under *Phillips II* the cap should not benefit the insurer when *Stowers* facts exist, and *Stowers* facts are determined based on the jury verdict, not the capped judgment.  *See Phillips II*, 288 S.W.3d at 881 n.6.  Even if the amount that plaintiffs receive over the cap is characterized as a "windfall," it is one that *Phillips II* believed the Texas Legislature intended, and that can be obtained only if a plaintiff proves that the physician's insurer breached its *Stowers* duty.

to address in *Canal* and *Phillips II*.  This does not mean, however, that the statutory *Stowers* Exception claim functions in the same way as a common law equitable subrogation claim.  Instead, the *Phillips II* court used the equitable subrogation claim created in *Canal* to illustrate how the *Stowers* Exception claim preserves the insurer's incentive to reasonably settle.

C

Because the court holds that, as interpreted in *Phillips II*, § 11.02(c) provides injured third parties a direct cause of action against insurers when facts exist that would allow a party to invoke the *Stowers* doctrine, and plaintiffs have adequately pleaded that such *Stowers* facts exist, the court denies MedPro's motion to dismiss plaintiffs' § 11.02(c) *Stowers* Exception claim.

IV

In their amended complaint, plaintiffs assert that MedPro violated Tex. Ins. Code Ann. § 541.060(a)(2)(A) (West 2009), that it acted in bad faith and with gross negligence, and that it breached the policy.  At oral argument, the court inquired of plaintiffs about the grounds for these claims.  Although plaintiffs' counsel neither withdrew the claims nor conceded that they lack merit, he essentially acknowledged that plaintiffs are primarily pursuing the claim that the court has today declined to dismiss.  Accordingly, based on the briefs and plaintiffs' counsel's position at argument, the court dismisses plaintiffs' claims for violation of § 541.060(a)(2)(A), bad faith and gross negligence, and breach of contract.

- 20 -

*     *     *

For the reasons explained, the court denies MedPro's motion to dismiss as to plaintiffs' *Stowers* Exception claim, and grants the motion to dismiss plaintiffs' claims for violation of § 541.060(a)(2)(A), bad faith and gross negligence, and breach of contract.

**SO ORDERED.**

March 5, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

- 21 -