IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DALE BRAMLETT, INDIVIDUALLY, | § | |
| AND AS INDEPENDENT | § | |
| ADMINISTRATOR OF THE ESTATE | § | |
| OF VICKI BRAMLETT, DECEASED, | § | |
| et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:10-CV-2048-D |
| VS. | § | |
| | § | |
| THE MEDICAL PROTECTIVE | § | |
| COMPANY OF FORT WAYNE, | § | |
| INDIANA, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this direct *Stowers*-type[1] action, defendants The Medical Protective Company and Medical Protective Insurance Services, Inc. (collectively, "MedPro") move for summary judgment, contending that a reasonable jury could not find that MedPro unreasonably rejected plaintiffs' demands to settle within policy limits their underlying medical malpractice lawsuit against Benny P. Phillips, M.D. ("Dr. Phillips"), and that plaintiffs' suit is time-barred. For the reasons that follow, the court denies MedPro's motion and supplemental motion for summary judgment.

---

[1]*G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

I

Because the relevant background facts and procedural history of this case are set out extensively in prior opinions of this court and of Texas state courts, the court will focus on the facts and procedural history pertinent to this decision.[2]   In October 2002 plaintiffs' decedent, Vicki Bramlett ("Mrs. Bramlett"), underwent a hysterectomy performed by Dr.

---

[2]The court is deciding today MedPro's motion for summary judgment, filed October 31, 2011, and its supplemental motion for summary judgment, filed April 23, 2012. Briefing on these motions concluded on January 22, 2013. Because there are several sets of briefs and appendixes, it may be helpful to summarize the procedural history related to the summary judgment motions themselves.

MedPro filed its October 31, 2011 motion for summary judgment while its motion to dismiss was pending. Plaintiffs responded to the motion on November 20, 2011, but they also sought a continuance under Fed. R. Civ. P. 56(d). MedPro replied to plaintiffs' response on December 5, 2011. In a December 12, 2011 order, the court denied plaintiffs' continuance motion without prejudice, stating that it intended to decide first defendants' pending motion to dismiss. On March 5, 2012, the same day the court decided the motion to dismiss, it granted plaintiffs permission to stand on their November 20, 2011 summary judgment response or move anew for a continuance. Plaintiffs requested a continuance. MedPro sought leave to file a supplemental or amended summary judgment motion. While MedPro's motion for leave was pending, it filed on April 23, 2012 the supplemental motion for summary judgment that is pending for decision today. Because that motion was prematurely filed, the court excused plaintiffs from responding unless the court later granted MedPro leave to file the motion. After the court granted MedPro such leave, plaintiffs filed on June 26, 2012 a response to MedPro's October 31, 2011 and April 23, 2012 summary judgment motions, and they also moved for a continuance under Rule 56(d). MedPro replied to plaintiffs' summary judgment response on July 10, 2012. In a September 7, 2012 memorandum opinion and order, *Bramlett v. Medical Protective Co. of Fort Wayne, Ind.*, 2012 WL 3887059, at *4 (N.D. Tex. Sept. 7, 2012) (Fitzwater, C.J.), the court granted plaintiffs' continuance motion. In accordance with the court's decision, plaintiffs filed their supplemental summary judgment response, brief, and appendix on January 7, 2013. MedPro filed its supplemental reply, brief, and (with leave of court) appendix on January 22, 2013.

In sum, after three rounds of briefing, MedPro's October 31, 2011 and April 23, 2012 summary judgment motions are now ripe for decision.

Phillips, MedPro's insured.[3]  Four days following her surgery, she died from complications due to post-operative bleeding.   Shortly thereafter, Benjamin H. Davidson, II, Esquire ("Davidson"), Dr. Phillips' attorney, notified a MedPro claims adjuster, Debra Crawford ("Crawford"), of a potential claim against Dr. Phillips arising from Mrs. Bramlett's death, and he sent Crawford a copy of Mrs. Bramlett's hospital records.   Crawford also met with Dr. Phillips and Davidson to discuss the case.   In February 2003 Crawford was informed that Mrs. Bramlett's death certificate indicated that she died as a result of post-operative bleeding and that the cause of death was listed as an "accident."

In late May 2003 Davidson notified Crawford that a medical malpractice suit had been filed against Dr. Phillips and other parties in connection with Mrs. Bramlett's death (the "Underlying Suit").   He enclosed a copy of the state court petition, although the petition did not specify how Dr. Phillips had negligently contributed to Mrs. Bramlett's death.   Crawford knew at this point, however, that this was a very serious case.   Apart from having the medical records, she was aware that Dr. Phillips left the hospital to work out with his personal trainer after his office was informed that a blood test he had ordered showed that Mrs. Bramlett's hemoglobin level was low, an indication of internal bleeding.   MedPro knew that, despite Dr. Phillips' suspicion that Mrs. Bramlett was suffering from internal bleeding, he did not check

---

[3]In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, L.L.C.*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

the results of this test before leaving the hospital. By the time he learned of Mrs. Bramlett's status and returned to the hospital, it was too late to save her.

On December 17, 2003, more than one year after Mrs. Bramlett's death, plaintiffs[4] made their first policy limits settlement demand ("first *Stowers* demand"). Plaintiffs stated that they would settle the case for policy limits, i.e., $200,000. Crawford had the authority to settle the case for this amount, but she declined.

On March 23, 2004 plaintiffs made their second policy limits settlement demand ("second *Stowers* demand"). It was not until March 31, 2004, however, that MedPro obtained plaintiffs' expert report setting out the specifics of plaintiffs' theory of Dr. Phillips' negligence. The second *Stowers* demand expired on April 9, 2004.

The Underlying Suit eventually went to trial. Based on a jury verdict in plaintiffs' favor, the trial court entered judgment against Dr. Phillips for $9,196,364.50 in actual damages and $2,972,000 in punitive damages. *See Phillips v. Bramlett*, 258 S.W.3d 158, 164 (Tex. App. 2007), *rev'd*, 288 S.W.3d 876 (Tex. 2009). On appeal, the court of appeals largely affirmed the judgment (it reversed on the issue of gross negligence, and it suggested a remittitur that plaintiffs accepted, *id.* at 182-83, 183-84), but the Supreme Court of Texas granted Dr. Phillips' petition for review and reversed and remanded. The Supreme Court ordered the trial court to cap Dr. Phillips' personal liability and render judgment pursuant to

---

[4]In this suit and the Underlying Suit, plaintiffs are Dale Bramlett, individually, and as independent administrator of the Estate of Vicki Bramlett, Deceased, Shane Fuller, and Michael Fuller.

Tex. Rev. Civ. Stat. Ann. Art. 4590i, § 11.02(a) (repealed Sept. 1, 2003), a provision of the now-repealed Texas Medical Liability and Insurance Improvement Act of 1977 ("MLIIA") that limited a physician's civil liability for damages in an action on a health care liability claim (the "Physician's Liability Cap").  *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) ("*Phillips II*").  In doing so, the court "reserv[ed] for another case any suit against *the insurer* under section 11.02(c)'s Stowers exception."  *Id.* at 882 (emphasis added).  This exception provided that § 11.02 did not limit *an insurer's* liability where facts existed that would enable a party to invoke the *Stowers* doctrine.

Following the Supreme Court's decision in *Phillips II*, plaintiffs filed the instant lawsuit in Texas state court against MedPro and others.[5]  Following removal of the case to this court, MedPro filed a motion to dismiss, which the court granted in part and denied in part.  *See Bramlett v. Med. Protective Co.*, 855 F.Supp.2d 615, 625 (N.D. Tex. 2012) (Fitzwater, C.J.) ("*Bramlett III*").  In pertinent part, the court held in *Bramlett III* that plaintiffs could bring a direct *Stowers*-type action against MedPro.  *Id.* at 621-22 ("Having studied *Phillips II,* the court concludes that the opinion can only reasonably be understood as interpreting § 11.02(c) to grant an injured third party a direct cause of action against the physician's insurer when *Stowers* facts exist.").[6]

---

[5]The suit also named Dr. Phillips as a defendant, but he was dismissed with prejudice on his motion.

[6]The court dismissed all of plaintiffs' claims except their direct *Stowers* action.

- 5 -

MedPro moves for summary judgment dismissing plaintiffs' direct *Stowers* action.[7]
Plaintiffs oppose the motions.

## II

Because plaintiffs will bear the burden of proof on their claim at trial, MedPro can
meet its summary judgment obligation by pointing the court to the absence of admissible
evidence to support the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once
MedPro does so, plaintiffs must go beyond their pleadings and designate specific facts
showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d
1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is
such that a reasonable jury could return a verdict in plaintiffs' favor. *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs' failure to produce proof as to any essential
element of their claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v.
Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is
mandatory if they fail to meet this burden. *See Little*, 37 F.3d at 1076.

Because MedPro is also moving for summary judgment on a limitations defense for
which it will have the burden of proof at trial, to be entitled to summary judgment based on
limitations, it "must establish 'beyond peradventure all of the essential elements of the . . .

---

[7]MedPro's October 31, 2011 motion for summary judgment has been mooted by the
court's decision in *Bramlett III*. The grounds for summary judgment that the court discusses
in this memorandum opinion and order are the ones contained in MedPro's April 23, 2012
motion. To the extent MedPro has presented new arguments for summary judgment in its
reply briefs filed on July 10, 2012 and January 22, 2013, the court has considered only the
grounds fairly presented in the April 23, 2012 motion itself.

defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that MedPro must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

In two grounds that the court discusses separately below, MedPro moves for summary judgment on the basis that, as a matter of law, its decisions not to accept the first and second *Stowers* demands were reasonable. MedPro maintains that its decision not to accept the first *Stowers* demand was reasonable because plaintiffs had not provided the statutorily-required expert report before their settlement demand expired. It posits that the decision not to accept the second *Stowers* demand was reasonable because the demand was left open for only 17 days.

Under the *Stowers* doctrine,[8] an insurer owes an implied duty of ordinary care to its

_____

[8]Although plaintiffs' claim is a direct *Stowers* action rather than a common-law *Stowers* action, neither side argues that the common-law *Stowers* doctrine requirements are inapposite when determining MedPro's liability. The court has found no indication that the *Stowers* liability standard (i.e., the ordinarily prudent insurer test) should not apply in the case of a direct *Stowers* action. As *Bramlett III* recognized, § 11.02(c) was designed to transfer the *Stowers* action from the insured to the injured-third party, who would otherwise

insured to accept a reasonable settlement demand that is within policy limits.  *See, e.g., Am.
Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994); *G.A. Stowers Furniture
Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved)
(holding that insurer "is held to that degree of care and diligence which a man of ordinary
care and diligence would exercise in the management of his own business.").

> The *Stowers* duty is not activated by a settlement demand unless
> three prerequisites are met: (1) the claim against the insured is
> within the scope of coverage, (2) the demand is within the
> policy limits, and (3) the terms of the demand are such that an
> ordinarily prudent insurer would accept it, considering the
> likelihood and degree of the insured's potential exposure to an
> excess judgment.

*Garcia*, 876 S.W.2d at 849.  "As a threshold matter, 'a settlement demand must propose to
release the insured fully in exchange for a stated sum of money.'"  *Trinity Universal Ins. Co.
v. Bleeker*, 966 S.W.2d 489, 491 (Tex. 1998) (quoting *Tex. Farmers Ins. Co. v. Soriano*, 881
S.W.2d 312, 314 (Tex. 1994)).  "In the context of a *Stowers* lawsuit, evidence concerning
claims investigation, trial defense, and conduct during settlement negotiations is necessarily
subsidiary to the ultimate issue of whether the claimant's demand was reasonable under the
circumstances, such that an ordinarily prudent insurer would accept it."  *Garcia*, 876 S.W.2d
at 849.  "[S]hifting the risk of an excess judgment onto the insurer is not appropriate unless
there is proof that the insurer was presented with a reasonable opportunity to settle within
policy limits."  *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 263 (Tex. 2002)

---

bear the consequences of the Physician Liability Cap, and thereby prevent the insurer from
benefiting.  *See Bramlett III*, 855 F.Supp.2d at 620.

- 8 -

(citing *Garcia*, 876 S.W.2d at 849).

### IV

MedPro contends that it is entitled to summary judgment because, as a matter of law, its decision not to accept plaintiffs' first *Stowers* demand was reasonable.

### A

There is no dispute regarding the first two *Stowers* elements: plaintiffs' claim was within the scope of coverage and the demand was within policy limits. MedPro maintains, however, that its decision not to accept the first *Stowers* demand was reasonable as a matter of law because plaintiffs failed to furnish an expert report that complied with the statutory prerequisites regarding Dr. Phillips and his practice group. MedPro argues that the report that plaintiffs did furnish focused on, and criticized, other defendants (hospital entities and nurses); when the expert mentioned Dr. Phillips, he offered no complaints or criticisms regarding him or his practice group; and that "[n]either Dr. Phillips nor his practice group [was] implicated in the slightest sense, either in [the expert's] opinions regarding the applicable standard of care, any departures from the applicable standard of care, or the medical consequences caused by any failure to satisfy an applicable standard of care." Ds. Apr. 23, 2012 Br. 6. MedPro therefore maintains that, as a matter of law, the decision not to accept the first *Stowers* demand was reasonable because the expert report did not include any of the statutorily-required opinions regarding Dr. Phillips or his practice group, and the report indicated that plaintiffs and their expert held the hospital and its nurses wholly responsible for plaintiffs' damages and for the death of Mrs. Bramlett.

- 9 -

B

MedPro is not entitled to summary judgment based on this basis.  Under § 13.01(d) of Article 4590i, the absence of the statutorily-required expert report regarding Dr. Phillips would only have resulted in plaintiffs' taking a nonsuit, which would not have prevented them from refiling their suit against Dr. Phillips.[9]  And despite the fact that the expert's report was critical of other defendants and did not implicate Dr. Phillips and his practice group, MedPro was aware of other facts that would enable a reasonable jury to find that a reasonably prudent insurer would have accepted the first *Stowers* demand despite the absence of an expert report.[10]

For example,[11] plaintiffs have produced evidence that, at the time of the first *Stowers*

_____

[9]Under Texas law, when a nonsuit is taken, it restores the plaintiffs to the position they would have been in before they filed suit.  *See, e.g., America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 877 (Tex. App. 1995, pet. denied) ("It is true that orders of nonsuits or dismissals without prejudice are not an adjudication on the rights of the parties because the parties are simply returned to the positions they were in before suit was brought." (citing *Thompson v. Tex. Dep't of Human Res.*, 859 S.W.2d 482, 484 (Tex. App. 1993, no writ)).  Absent evidence that plaintiffs could not have refiled their suit because, for example, it would have been time-barred (and, as the court explains below, the suit would *not* have been time-barred), they could have refiled their suit and obtained additional time to furnish an expert report that implicated Dr. Phillips.

[10]There is no *per se* requirement that an insurer know all, or even most, of the facts of the case in order to have a *Stowers* duty.  Indeed, early settlement is encouraged. *See Garcia*, 876 S.W.2d at 851 n.18 ("If the claimant makes such a settlement demand early in the negotiations, the insurer must either accept the demand or assume the risk that it will not be able to do so later.  In cases presenting *a real potential* for an excess judgment, insurers have a strong incentive to accept." (emphasis added)).

[11]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing

demand, MedPro (or Crawford as its claims adjuster) (1) had received a copy of Mrs. Bramlett's hospital records; (2) knew that Dr. Phillips performed a hysterectomy on Mrs. Bramlett; (3) knew that Mrs. Bramlett died from complications due to post-operative bleeding; (4) knew that Dr. Phillips was suspicious that Mrs. Bramlett was suffering from internal bleeding and therefore ordered a blood test; (5) knew that Dr. Phillips' office was informed that the blood test indicated that Mrs. Bramlett was bleeding internally; (6) knew that Dr. Phillips left the hospital to work out without checking the results of the blood test he had ordered; (7) knew that by the time Dr. Phillips learned of Mrs. Bramlett's status and returned to the hospital, it was too late to save her; (8) Crawford had met with Dr. Phillips and Davidson to discuss the case; (9) knew the case was very serious; and (10) Crawford had authority to settle the claim for $200,000, the policy limits.  A reasonable jury could find from the evidence in the summary judgment record that, in response to plaintiffs' first *Stowers* demand, a reasonably prudent insurer would have settled within policy limits.

This is not to say, of course, that plaintiffs' failure to furnish an expert report that implicated Dr. Phillips and his practice group plays no role in the *Stowers* equation.  The jury in this case may well be persuaded that MedPro acted as would an ordinarily prudent insurer, considering that plaintiffs' expert report was highly critical of other defendants and gave Dr. Phillips and his practice group slight attention and no criticism.  But there is ample evidence

---

*Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).  The court will therefore summarize or provide examples of evidence that presents genuine and material fact issues that require a trial.

in the summary judgment record that would enable a reasonable jury to find in plaintiffs' favor as well.  MedPro therefore is not entitled to summary judgment on this ground.

## V

MedPro maintains that it is entitled to summary judgment concerning plaintiffs' second *Stowers* demand because its decision not to accept the demand was reasonable as a matter of law.  As with plaintiffs' first *Stowers* demand, there is no dispute regarding the first two *Stowers* elements.

MedPro contends that, following the expert's first report and the decision of the other defendants to settle for $2.3 million, plaintiff's expert wrote a new report on March 17, 2004 that for the first time opined that Dr. Phillips and his practice group were culpable for Mrs. Bramlett's death.  On March 23, 2004 plaintiffs sent MedPro the second *Stowers* demand, imposing a deadline of April 9, 2004 at 5:00 p.m., i.e., 17 days later.  Citing *State Farm Lloyds Insurance Co. v. Maldonado*, 963 S.W.2d 38 (Tex. 1998), MedPro contends that a period of 17 days was insufficient as a matter of law to evaluate and accept a policy limits settlement demand.

MedPro is not entitled to summary judgment on this basis.  To begin with, the court recognizes that there may be cases in which an insurer has so little time to respond to a *Stowers* demand that no reasonable jury could find that it failed to act as a reasonably prudent insurer by rejecting the demand.  But apart from such cases, the question whether an insurer has had a reasonable amount of time to respond to a *Stowers* demand will generally present a quintessential, constituent fact issue that is subsumed within the jury's application of the

- 12 -

reasonably prudent insurer standard.  In the present case, the court cannot say, as a matter of

law, that MedPro had insufficient time to accept the second *Stowers* demand.  This question

is one of fact that must be resolved by the trier of fact.

VI

MedPro contends that it is entitled to summary judgment based on the statute of

limitations.

A

MedPro argues that the limitations period for plaintiffs' claim accrued when facts

existed that authorize them to seek judicial relief, and that this occurred at the time of the jury

verdict.  They point out that plaintiffs seek to recover as their damages all or part of the jury

verdict, which was returned on August 26, 2005.  MedPro maintains that because plaintiffs

assert that their damages were established on that date, and since the allegedly wrongful

conduct of which they complain occurred no later than April 9, 2004 (the deadline to accept

the second *Stowers* demand), then regardless whether the limitations period is two years or

four years, it expired no later than August 26, 2009, before they filed the instant case on

September 7, 2010.

Plaintiffs respond that the limitations period does not commence until the judgment

in the Underlying Suit becomes final and that it is not yet final because the case is still on

appeal.

B

Section 11.02(c) does not specify a specific limitations period, but the Texas Supreme Court has held that "[w]hen a statute lacks an express limitations period, courts look to analogous causes of action for which an express limitations period is available either by statute or by case law." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 518 (Tex. 1998). Because a common-law *Stowers* claim is governed by a two-year limitations period, *see Street v. Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988), the court holds that a two-year limitations period also governs plaintiffs' direct *Stowers* action.

Because limitations is an affirmative defense on which MedPro will have the burden of proof at trial, to be entitled to summary judgment on this defense, it must satisfy the heavy "beyond peradventure" standard, demonstrating that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See supra* § II.

The court holds that MedPro has failed to establish beyond peradventure that plaintiffs' lawsuit is time-barred. In fact, a reasonable jury could only find from the evidence in the summary judgment record that this suit is *not* barred by limitations. Texas law allows an insured to bring a *Stowers* action as soon as there is a jury verdict exceeding policy limits. *See Archer v. Med. Protective Co. of Fort Wayne, IN*, 197 S.W.3d 422, 426 (Tex. App. 2006, pet. denied) ("[W]hile one need not await until all appeals have ended to sue, all the elements to an enforceable *Stowers* claim have yet to accrue [for the purpose of limitations] while appeals remain pending."). But although Texas law *permits* such an action to be brought, a

common-law *Stowers* action does not accrue until the judgment is final.  *See Street*, 756 S.W.2d at 301.  This rule is in part animated by the premise that "[n]o valid public policy is served by forcing an insured to bring an action which may ultimately prove unnecessary." *Id.* at 302.  Here, the final judgment in the Underlying Suit is not final.  At the time plaintiffs specifically responded to this ground of MedPro's motion (June 26, 2012), and when plaintiffs adopted their prior brief on January 7, 2013, the case was still pending in the Supreme Court of Texas.[12]  Accordingly, the limitations period has not yet commenced, and a reasonable jury could only find that this lawsuit is not time-barred.

## VII

Finally, MedPro moves for summary judgment on the ground that plaintiffs cannot prove the elements of their direct *Stowers* action.

## A

MedPro argues that, even if in some circumstances a tort plaintiff might be able to pursue a direct claim against a defendant's insurance company (as this court held in *Bramlett III*), such circumstances are not present in this case.  MedPro contends that, because a *Stowers* claim is a negligence claim, plaintiffs must be able to prove the elements of a negligence claim: a duty, a breach of the duty, and damages proximately caused by the breach.  MedPro contends that plaintiffs cannot establish a duty because, as a matter of law, MedPro did not owe any duty to plaintiffs because the insurer's duties are owed only to its

---

[12]This court can also take judicial notice that Case No. 12-0257, *Phillips v. Bramlett*, is still pending in the Supreme Court of Texas and was argued on February 6, 2013.

insured, not to third-party claimants.  It contends that plaintiffs cannot satisfy the proximate

cause element because their alleged damages were proximately caused by Dr. Phillips, not

by a negligent act or omission of MedPro, who has fully and completely paid and satisfied

the judgment in the Underlying Suit.

## B

MedPro's first argument appears to be a form of reargument or motion for

reconsideration of the court's decision in *Bramlett III*.  The court is not unsympathetic to

MedPro's concerns.  In *Bramlett III* the court referred to *Phillips II* as an opinion that "is at

times difficult to comprehend and that has perplexed four dissenting justices as to its

reasoning and effect."  *Bramlett III*, 855 F.Supp.2d at 621.  But the fact remains that *Bramlett*

*III* answers all of MedPro's arguments, explaining how its interpretation of *Phillips II*

"allow[s] the injured third party to recover from the insurer the difference between the jury

verdict and what would otherwise have been recoverable under the Physician Liability Cap."

*Id.* at 622.

Under *Phillips II*, § 11.02(c) "grant[s] an injured third party a direct cause of action

against the physician's insurer when *Stowers* facts exist."  *Id.*  Section 11.02(c) provides this

direct *Stowers* action because, although the insurer's legal duty is to the physician and not

the injured third-party, if the injured third-party could not maintain a direct action, the insurer

would benefit from the Physician's Liability Cap, in direct contravention of § 11.02(c).

MedPro's arguments are inadequate to withstand the force of *Phillips II*'s interpretation and

application of § 11.02(c) to the facts of this very case.

MedPro's contention that plaintiffs cannot prove proximate cause because their damages were caused by Dr. Phillips is also foreclosed by *Phillips II*.  Under *Phillips II*, the injury to the third-party is "for the amount from the Physician Liability Cap up to the amount of the jury verdict."  *Bramlett III*, 855 F.Supp.2d at 623.  This injury is caused by the insurer's negligent failure to settle, not by the physician's malpractice.  *See id.* at 622 ("Under this interpretation, the *Stowers* Exception ensures that insurers will face excess liability if they fail to reasonably settle within policy limits, just as a traditional *Stowers* action did before the Physician Liability Cap was enacted.").  And MedPro's payment of the judgment is not controlling because, if plaintiffs prove their *Stowers* claim, they are entitled to recover up to the amount of the jury verdict, not the judgment amount.  *See id.* at 622 ("The result of this interpretation is to allow the injured third party to recover from the insurer the difference between the jury verdict and what would otherwise have been recoverable under the Physician Liability Cap."); *id.* ("Thus, according to the [*Phillips II*] majority, to maintain an insurer's incentive to reasonably settle, the Texas Legislature enacted § 11.02(c) to provide injured third parties a direct cause of action to recover the difference between the Physician Liability Cap and the jury verdict."); *id.* at 623 ("The injured third party has a direct *Stowers* Exception claim created by the Texas Legislature in § 11.02(c) for the amount from the Physician Liability Cap up to the amount of the jury verdict.").

Accordingly, MedPro is not entitled to summary judgment on this basis.

\*   \*   \*

For the reasons explained, the court denies MedPro's motion and supplemental motion

for summary judgment.

**SO ORDERED.**

March 5, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE